PROPRIETORS OF MACHIAS BOOM

*vs.*

CORNELIUS SULLIVAN, and others.

Washington.    Opinion March 3, 1893.

*Corporation.  Constitutional Law.  Sorting and Rafting Logs.  Spec. Laws, Massachusetts, Feb'y 13, 1808, c. 55; Spec. Laws, Maine, 1891, c. 174.*

A charter was granted to the proprietors of Machias Boom by the Commonwealth of Massachusetts, by act passed February 13, 1808, for the purpose of laying and maintaining a boom across the West Branch of Machias River; and therein specified fees and tolls were allowed for "rafting and securing" logs and timber. The legislature, however, reserved the right at all times to revise and alter said fees and tolls.

By special act of the legislature of this State passed in 1891, c. 174, the fees and tolls were changed, and a rule established by which to fix the price for "sorting and rafting" logs and timber so rafted and secured at said boom and also for "boomage" of logs and timber.

*Held*: That the powers reserved to the state had not been transcended, and there had been no impairment of the obligation of contract within the meaning of the contract clause of the constitution.

Legislation oftentimes may be such as to injuriously affect the interests of those with whom the contract exists, and yet impair no obligation of contract.

No additional duty independent of that contemplated by the charter is imposed upon the corporation by the insertion of the word "sorting" in the amendatory act.

The duty of sorting and rafting according to ownership is imposed by the charter under the term "rafted."

AGREED STATEMENT.

The case is stated in the opinion.

*Charles Sargent*, for plaintiff.
*Heath and Tuell*, for defendant.

FOSTER, J.    By the provisions of c. 55 of special laws of the Commonwealth of Massachusetts, passed February 13, 1808,

certain persons therein named and their successors were constituted a corporation by the name of the proprietors of Machias Boom, for the purpose of laying and maintaining a boom across the west branch of Machias river.

The third section of that act provides : " That the said corporation shall be entitled to receive of the respective owner or owners of masts, logs and timber, which shall be rafted and secured at said boom by any person or persons, the following respective fees or toll : for each mast six (6) cents, for each pine mill log of thirty feet in length or upwards four (4) cents, for each pine mill log under thirty feet in length three (3) cents, and for each spruce or hemlock mill log, or stick of timber, two (2) cents. Provided, however, that the fees or toll shall at all times hereafter be subject to the revision or alteration of the Legislature."

A subsequent act of the Legislature of this State (c. 174, special laws of 1891), entitled, " An act to regulate the tolls of the Machias Boom," is as follows :

" Section 1. The fees or tolls of the proprietors of the Machias Boom are hereby revised and altered so that said corporation shall be entitled to receive of the respective owners of logs and timber which shall be rafted and secured at said boom by any person or persons the following respective fees or tolls : for sorting and rafting logs and lumber, so secured at said boom, a price per stick not to exceed such prices as the owners of such logs and lumber shall in writing agree to perform such sorting and rafting for, at their own expense, such agreement by them signed to be filed with said corporation before each rafting season shall open, to be for the season then next ensuing and if accepted, to bind such owners to be responsible for the acts, default or negligence of all persons employed thereunder, and also provide therein that if at any time the corporation is dissatisfied with the count of the logs, then it shall be authorized to employ a man to take account of them, and his count shall be final, his wages to be paid one half by the corporation and one half by the log owners, such wages to be in addition to the prices aforesaid ; for the boomage of each pine, spruce or hem-

lock mill log or stick five-eighths of a cent; for the boomage of each cedar stick, one quarter of a cent; provided, however, that all the fees or toll of said corporation shall at all times hereafter be subject to the revision or alteration of the legislature."

While this action is brought by the plaintiff corporation ostensibly to recover the amount claimed in the account annexed, it is in reality to test the validity of this last mentioned act.

The contention on the part of the plaintiff is, that the grant of the franchise to this corporation, when accepted, became a contract executed which cannot be summarily annulled, or its powers, rights or privileges otherwise impaired without the consent of the corporation; and that this subsequent legislation is an impairment of the obligation of that contract, and brings it within the contract clause of the constitution of the United States and of this State.

It has long been the settled doctrine that a state in the exercise of her sovereignty may contract like an individual and be bound accordingly, and that acts of incorporation, granted upon a valuable consideration, partake of the nature of contracts within the meaning of that clause of the constitution which prohibits the enactment of any law impairing the obligation of contracts. *Rockland Water Co.* v. *Camden and Rockland Water Co.* 80 Maine, 544.

The question, therefore, to be determined in this class of cases where legislative interference is claimed, is whether the act in question does in fact impair the obligation of contract.     Oftentimes legislation may be such as to injuriously affect the interests of those with whom the contract exists, and yet impair no obligation of contract.

To determine whether the legislature has transcended its powers in this particular case, we must examine not only the act of which complaint is made, but also the language of the original charter granted to this plaintiff corporation.

The authority upon which this legislation is based comes from the charter itself.     It can come from no other legitimate source. This authority was expressly reserved to the State and became a part of the contract between the State and the plaintiff cor-

poration, and is thus expressed : "Provided, however, that the fees or toll shall at all times hereafter be subject to the revision or alteration of the legislature." This reserved or delegated power, vested in the legislature, permits it to exercise the right of revising or changing the price or compensation to be received by the plaintiff for the acts required to be performed under its charter. Has the legislature done more than that? We think not.

The plaintiff, however, contends that by the act an additional duty is cast upon it independent from that of rafting and securing, by introducing the work of "sorting"— a term not found in the original charter. But the plaintiff admits that, by its charter, it was its duty to secure all logs coming into its boom, and subsequently to raft out the same. And the agreed facts show that, in the transaction of the business at the boom, it is necessary for logs to be pushed out and rafted according to their ownership. The amendatory act, evidently proceeding upon the idea that the duty of rafting was imposed upon the corporation by its charter, first establishes a rule by which to fix the price for rafting, and next establishes in effect an independent price for boomage, or securing the logs. Over this duty of securing or boomage, there seems to be no controversy. For the performance of that, the act authorizes a specific price according to the kind of lumber boomed or secured.

Admitting, according to the plaintiff's contention, that the word "rafted" in section three of the charter, imposes upon the corporation the duty of rafting the lumber that comes into the plaintiff's boom, we are not inclined to hold that by the use of the word "sorting,"— or the term "sorting and rafting,"— in the amendatory act, any new or additional duty has been imposed upon the corporation. There is no material difference in legal construction between the use of the word "rafted" as contained in the charter, and the phrase "sorting and rafting" as used in the amendatory act. The act of sorting is a necessary part of the work of rafting. The very nature of the business, which is a proper element to be taken into consideration in giving construction to the language of the charter, indicates

that logs of different owners arrive in the boom, and in rafting have to be separated or sorted out. The case shows that in rafting logs they must be "pushed out and rafted according to their ownership." To this extent at least they must be sorted,— the logs of the different owners being sorted according to ownership. If the logs are simply sorted by ownership and rafted without sorting by kinds, then there is no ground for any complaint that a new duty is cast upon the plaintiff. "Sorting and rafting," mentioned in the act of 1891, may well be construed in harmony with the language of the original charter, and imposing no greater duties than are therein implied. The duty of the corporation is performed when the logs have been secured or boomed, sorted and rafted by ownership.

While thus construing the meaning of the language used both in the charter and the amendatory act, we are not inclined to that broader construction claimed by the learned counsel for the defendants,— that by the word "rafted" the logs should not only be sorted according to ownership but also according to kinds. However convenient this might be for the owners, there is nothing in the case or in the signification of the word that requires such a construction to be given. Additional expense would be incurred were the logs to be sorted by kinds instead of ownership.

The act in question, while adding no new duties, takes away no rights, and destroys no privileges guaranteed by the State. It simply furnishes a rule by which the compensation is to be adjusted. It establishes certain necessary precedent conditions, which, if complied with, fix the maximum price for rafting.

In the case at bar these conditions have been substantially complied with. The offers were declined by the plaintiff, and this action is brought to recover upon the old rate as specified in the charter of 1808. The provisions of the amendatory act regulating tolls must apply. And in accordance with the stipulation in the report of the case, judgment must be rendered for the plaintiff for the sum of $101.50, together with interest thereon from the date of the writ.              *Judgment accordingly.*

PETERS, C. J., WALTON, LIBBEY and HASKELL, JJ., concurred.