## PROPRIETORS OF MACHIAS BOOM

*vs.*

## WILLIAM C. HOLWAY, and others.

Washington.    Opinion May 22, 1896.

*Corporation.    Tolls.    Logs.    Special Laws, Mass., Feb'y 13, 1808, c. 55;
      Special Laws, Maine, 1891, c. 174.*

The court adheres to its former decision that the fees and tolls provided in the plaintiff's charter, Special Act, Mass., Feb'y, 1808, c. 55, were changed by the Special Act of Maine, 1891, c. 174; and that by the last act a rule was established by which was fixed the price for "sorting and rafting" logs and timber so rafted and secured at the boom, and also for "boomage" of logs and timber.

*Held;* that the legislature manifestly intended to fix the boomage at a price that would yield to the plaintiff corporation a reasonable profit, and thereupon adopted the peculiar scheme with respect to rafting for the purpose of giving to the log-owners the privilege of sorting and rafting their own logs at the actual cost to themselves on terms and conditions consistent with the paramount authority of the plaintiff corporation to retain the possession and control of its property.

It must have been anticipated, as a probable result of the practical operation of the scheme. that the defendants' offer would sometimes, if not always, be less than it would cost the plaintiff to perform the service; and yet it was held in the former opinion of the court (85 Me. 343) that the legislature had not exceeded the authority reserved to it in the charter of 1808. The question was directly and necessarily involved in the conclusions there announced, and the defendants may well invoke the maxim, stare decisis.

See *Propr's Machias Boom* v. *Sullivan*, 85 Maine, 343.

ON REPORT.

This was an action of assumpsit to recover $617.98 for rafting and booming the defendants' logs and for wedges and raft rope furnished at Machias, during the season of 1894.

The case is stated in the opinion.

*Chas. Sargent,* for plaintiff.

*H. M. Heath and C. L. Andrews,* for defendants.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WIS-
WELL, STROUT, JJ.

WHITEHOUSE, J.    This is an action on account annexed to the
writ to recover for booming, sorting and rafting the defendants'
logs secured by the plaintiff corporation in its boom at Machias, in
the year 1894.

It is stipulated in the report that if the tolls are to be assessed
under chapter 174 of the Private and Special laws of 1891, judg-
ment is to be entered for $208.59 and interest; otherwise the case
is to stand for trial.

The plaintiff corporation was chartered by virtue of chapter 55
of the special laws of Massachusetts for the year 1808.    The third
section of that act fixed certain "fees or toll" for logs "rafted and
secured" at the company's boom "by any person or persons," but
concluded with the following reservation: "Provided, however,
that the fees or toll shall at all times hereafter be subject to the
revision or alteration of the legislature."

It appears to have been determined by the legislature of Maine
for the year 1891 that the exigency had arisen when, in justice to
those affected by the operations of the company, this reserved
authority for the "revision and alteration" of the tolls should be
exercised.    Accordingly chapter 174 of the Private and Special
laws of that year was enacted, by which the tolls were so "revised
and altered" that the corporation should receive "for the boomage
of each pine, spruce, or hemlock mill-log or stick, five-eighths of a
cent; for the boomage of each cedar stick, one-quarter of a cent;"
and "for sorting and rafting logs and lumber so secured at said
boom, a price per stick not to exceed such prices as the owners of
such logs and lumber shall in writing agree to perform such sort-
ing and rafting for, at their own expense, such agreement by them
signed to be filed with said corporation before each rafting season
shall open, to be for the season then next ensuing and if accepted
to bind such owners to be responsible for the acts, default or
negligence of all persons employed thereunder."

In *Prop'rs of Machias Boom* v. *Sullivan*, 85 Maine, 343, the

constitutional limitations, as well as the proper construction of this amendatory act, were brought directly in question and definitely settled in the opinion of the court. In that action, as in this, an attempt was made by the plaintiff corporation to ignore this revision of the fees and toll effected by the amendment of 1891 and to continue the assessment for that season according to the rates established by the original charter which the legislature of Maine deemed excessive and unjust. Then, as now, it was contended by the plaintiff that the power to revise the fees reserved to the legislature in the original charter, could only be exercised by fixing and specifying in terms the exact amount which the plaintiff should be entitled to receive for rafting as well as booming, and that the scheme devised by the legislature of 1891 for the purpose of controlling the maximum price of "sorting and rafting" logs and lumber, which should "be rafted and secured at said boom by any person or persons," would have the effect to deprive the plaintiff corporation of the possession and control of a property and business protected by its charter, and to impair the value of an investment made upon the faith of that charter. Then, as now, the plaintiff contended that under this ingenious device, by specifying a price below the actual cost of sorting and rafting, the log owners would always have it in their power to compel the plaintiff either to surrender to them the possession and control of its boom, or perform the service of sorting and rafting at a loss. In that case the agreement of the log owners to do the "sorting and rafting at their own expense" at a price named, was signed by all those owning logs in the boom to be rafted out that season, with the exception of one. In the case at bar, the offer is also signed by all the log-owners except one, and his logs were included in the offer and the boomage and rafting fees on them ultimately paid by those signing the offer, according to the terms of a contract previously made by them for the purchase of his logs.

After disposing of the minor contentions of the parties, in the former case (85 Me. 343), by holding that under the amendment of 1891 no additional duty was imposed upon the plaintiff by the introduction of the word "sorting" and that by the terms of that

act logs were only required to be rafted out by ownership and not by kinds, the court proceeded to determine the constitutionality of the act, and the further questions of construction involved and stated above, as follows: "The question, therefore, to be determined in this class of cases where legislative interference is claimed, is whether the act in question does in fact impair the obligations of contract. Oftentimes legislation may be such as to injuriously affect the interests of those with whom the contract exists, and yet impair no obligation of contract. . . . . This reserved or delegated power vested in the legislature, permits it to exercise the right of revising or changing the price of compensation to be received by the plaintiff for the acts required to be performed under its charter. Has the legislature done more than that? We think not. . . . . The plaintiff admits that by its charter it was its duty to secure all logs coming into its boom, and subsequently to raft out the same. . . . . The act in question, while adding no new duties, takes away no rights, and destroys no privileges guaranteed by the state. It simply furnishes a rule by which the compensation is to be adjusted. It establishes certain necessary precedent conditions, which if complied with, fix the maximum price of rafting. In the case at bar these conditions have been substantially complied with. The offers were declined by the plaintiff, and this action is brought to recover upon the old rate as specified in the charter of 1808. The provisions of the amendatory act regulating tolls must apply."

It has been seen that there is no material fact to distinguish the case at bar from the case arising in 1891. Even the parties are the same, though the defendants are named in different order, and the only particular in which the cases differ is the amount offered by the log-owners as the price of the sorting and rafting. In 1891 they offered seven-eighths of a cent per stick for the sorting and rafting, claiming however, that under the terms of the act the rafting must be done by kind as well as by ownership. But it was determined by the court that, with respect to that branch of the work, the plaintiff's duty under the act was discharged when the logs were rafted out by ownership only, and not by kinds; and

this service of sorting and rafting by ownership the defendants offered to perform in 1894 for one-eighth of a cent per stick in addition to the fees for the boomage as fixed by the amendatory act, and to furnish the necessary wedges and raft rope.

It is still contended by the plaintiff, however, that this offer on the part of the defendant, though seasonably made, cannot be deemed a compliance with the act of 1891 because it is below the limit of actual cost, either to the plaintiff or to the defendants and so unreasonably low as to indicate bad faith on the part of the defendants.

It should be a sufficient answer to this objection, that in the former opinion of the court (85 Me. 343) it must have been anticipated as a probable result of the practical operation of this scheme that the defendant's offer would sometimes, if not always, be less than it would cost the plaintiff to perform the service; and yet it was held that the legislature had not exceeded the authority reserved to it in the charter of 1808. The question was directly and necessarily involved in the conclusions there announced by the court, and the defendants may well invoke the maxim "stare decisis et non quieta movere."

It may be further observed, however, that when the amendatory act of 1891 is examined in the light of the grievance designed to be remedied, it is manifest that the legislature intended to fix the boomage at a price that would yield the plaintiff corporation a reasonable profit and thereupon adopted this peculiar scheme with respect to rafting for the purpose of giving to the log-owners the privilege of sorting and rafting their own logs at the actual cost to themselves on terms and conditions consistent with the paramount authority of the plaintiff corporation to retain the possession and control of its property. The act declares that the price for rafting shall never exceed the offer of the log-owners, and in effect insures to them the right to raft their logs at their own expense provided their offer is declined. It satisfactorily appears from the testimony relating to the conduct of the defendants' business at their mills, that the work of sorting and rafting can be done to much better advantage and at less expense by the log-owners than by the

plaintiff corporation; and, even if that were a material inquiry, there is no evidence in this case that the defendants' offer was less than the actual expense incurred by them that would have been properly chargeable to the work of rafting by ownership alone, whatever might have been the actual cost to the plaintiff for the same service; for when done by the defendants' employees the work is, of course, done by marks and kinds as well as ownership, and is in all respects adapted to the convenience of manufacturing.

No complaint is made that the agreement or " offer " in writing signed by the defendants was not seasonably filed and in form sufficient to meet the requirements of the amendatory act. The probability that, under the circumstances of this case, any injury or prejudice to the plaintiff would result from the omission of one log-owner to sign the offer, is too remote to be a disturbing factor in the problem. So far as the plaintiff's rights or interests were involved, the contract of one of the defendants to purchase Allen's logs made before the offer was signed, was essentially equivalent to actual ownership. The boomage and rafting fees on those logs were paid by the defendants, and all the logs to be rafted out that season were practically embraced in the offer.

Thus all the conditions precedent named in the act as essential to fix the maximum price for rafting have been substantially complied with. No valid reason has been shown why full effect should not be given to the amendatory act of 1891 according to its clear meaning and manifest purpose. It is the opinion of the court that it must control the assessment of damages in this case. According to the stipulation in the report, judgment must be entered for the plaintiff for $208.59, with interest from the date of the writ.

*Judgment accordingly.*